**Roxie WALSH, d/b/a R & W Company, Appellant,**

v.

**Sidney Foss KENNEDY, Appellee.**

Court of Appeals of Kentucky.

Jan. 29, 1971.

Ralph H. Logan, Hardy Logan & Tross, Louisville, for appellant.

C. Alex Rose, John K. Gordinier, Norman L. Wagner, Curtis & Rose, Louisville, for appellee.

EDWARD P. HILL, Jr., Judge.

Appellee Kennedy sued Walsh for rentals claimed due under an oral lease of a dirt and gravel pit. Walsh filed a counterclaim alleging a written lease contract on a 35-acre tract, not covered by the verbal contract, and a breach thereof by Kennedy. Walsh claimed $603,500 damages in her answer. The judgment appealed from by Walsh found that there was a breach of the written contract by Kennedy but that Walsh failed to properly prove damages and awarded her judgment for $1,000 as nominal damages and $1,000 to reimburse Walsh for this amount spent for a survey used in connection with application for approval of the borrow pit by the zoning authority. Kennedy was given credit on this amount for $1,880, claimed by him for past-due rentals. Walsh appeals, and Kennedy cross-appeals. We affirm on the direct-appeal and on the cross-appeal.

Appellant Walsh argues that her proof was sufficient to entitle her to actual not nominal damages.

The only evidence offered by Walsh on the measure of damages was taken from the income tax return for 1965 of her deceased husband who originally entered into the verbal lease with Kennedy. After the death of her husband, Walsh took over the business and continued to operate it until the zoning authority issued, at the request

of Kennedy, a "stop-work" order. According to this evidence, the total income from the operation of the borrow pit for 1965 was $117,000, with a total expense of $95,620.72. There is no evidence that the net of over $22,000 was all profit on materials, or whether the value of the use of the machinery and equipment was included.

Appellant Walsh operated the borrow pit for just under six months and should have known the profits she made during that time. In fact, she testified she had those records but failed to produce them. All questions and answers propounded to and answered by Walsh relative to measure of damages are as follows:

"THE COMMISSIONER: Mrs. Walsh, I have one or two questions.

Do you have any records of your profits and expenses for the half year between your husband's death and the time you received the stop-work order?

"THE WITNESS: Yes, I have the ledgers that I kept, somebody has them. They are at Mr. Logan's or even the Internal Revenue may still have them.

"THE COMMISSIONER: Do you know of your own knowledge what your profit was for the first five months of 1966?

"THE WITNESS: No, I couldn't tell you that without having it before me.

"MR. LOGAN: May I show her these?

"THE COMMISSIONER: All right.

"MR. LOGAN: Do you know what month they are for, what year they are for, or actually what they are?

"THE WITNESS: This isn't my handwriting. These are the tickets that Mr. Homeister made out and took it for each day.

"MR. LOGAN: Thank you. That's all.

"MR. GORDINIER: I have no further questions. Thank you."

Appellant made no effort to prove the value of the written lease or the profits she made on the materials she moved. The hearing commissioner and the trial court correctly concluded that appellant's evidence was too speculative and uncertain to support a judgment for more than nominal damages. Mitchell Coal Company v. United Mine Workers of America, (6 Cir.) 313 F.2d 78.

The report of the commissioner recommended that Walsh recover all her costs. The chancellor approved the report in every detail except in the matter of adjudging the cost. The judgment directed that each party pay one-half the cost. Appellant Walsh contends on this appeal that the court erred in this adjudication of the cost.

■ The plaintiff-appellee succeeded in the recovery of rentals in the sum of $1,880, which was in the nature of a credit against appellant's judgment for breach of contract. Obviously both parties succeeded in recovering something under their respective demands. Under these circumstances, we cannot say the chancellor abused his discretion in dividing the cost burden. Poetter v. Poetter, 277 Ky. 662, 126 S.W.2d 1119.

■ Appellant included in her motion and grounds a request under CR 59.07 that the judgment be set aside and that she be permitted to introduce further evidence on the question of damages. This request was denied by the chancellor. The question is whether the chancellor erred in so doing. In this connection, it should be noted that this case was referred to the trial commissioner on November 27, 1967, and he filed his report on January 31, 1969, more than fourteen months during which there was time to prepare her case. Furthermore, appellant was sufficiently apprised of the efforts of the trial commissioner to develop this phase of the case by his questions addressed to Walsh, in answer to which she stated she had the important information and thereafter made no effort to produce it.

It has always been the aim of the courts to expedite the disposition of litigation and at the same time give the litigant his "day in court," so to speak, and reasonable time and opportunity to present his case. In these days of congestion in the courts, it is proper and appropriate that the court limit litigants to the traditional rights above enumerated.

The trial court has a broad discretion under CR 59.07 which will not be disturbed unless abuse of that discretion is shown. Carpenter v. Evans, Ky., 363 S.W.2d 108; Moore's Federal Practice, 2nd Ed., Vol. 6a, page 3724; Barron & Holtzoff's Federal Practice & Procedure, Vol. 3, sect. 1303, page 356; Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 143 F.2d 895, cert. denied (1944) 323 U.S. 766, 65 S.Ct. 119, 89 L.Ed. 613; and Ross v. McLean, 56 App.D.C. 62, 10 F.2d 627, cert. denied (1926) 270 U.S. 656, 46 S.Ct. 353, 70 L. Ed. 784.

We are not inclined to think the trial court erred in declining to set aside the verdict and allow appellant to present further evidence.

■ Appellant's final argument is to the effect that the trial court erred in refusing to file her amended counterclaim demanding punitive damages. We do not consider the breach of contract found by the report of the trial commissioner and by the judgment to justify awarding punitive damages. Accordingly, the chancellor properly refused to permit the filing of the amendment.

■ In support of his cross-appeal, appellee argues that appellant's breach of the verbal contract by failing to "backfill" and level the ground, justified him "in stopping appellant"; that he expended $1,500 to have his land backfilled and should have been given damages on his claim. He also argues that the award of $1,000 to appellant to reimburse her for expenses of a surveyor is clearly erroneous and that the $1,000

nominal damages is excessive. We find no merit in either of these arguments in support of appellee's cross-appeal.

The judgment is affirmed on the direct-appeal and on the cross-appeal.

All concur.